Karl ASHLEY, Appellant,

v.

The STATE of Texas, Appellee.

No. 50420.

Court of Criminal Appeals of Texas.

Sept. 23, 1975.

Brad Reid, Abilene, for appellant.

Ed Paynter, Dist. Atty., John W. Weeks, Asst. Dist. Atty., Abilene, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

BROWN, Commissioner.

The conviction is for false imprisonment; the punishment, enhanced under Sec. 12.-42(d), V.T.C.A., Penal Code, life imprisonment.

The complainant was a student at Hardin-Simmons College who worked part-time in the afternoons for an advertising company in Abilene. On the afternoon of September 20, 1974, as she was leaving work, her employer asked her to drop some advertising material at a place of business en route to the college. As complainant parked her car in front of the place of

business, she observed appellant standing on the sidewalk outside the building with his shoe off rubbing his foot. She asked him if he was having trouble and he answered that his foot hurt and he had to walk all the way to Hardin-Simmons. She stated that she was going to the college as soon as she made her delivery and would give him a ride. As she left the store appellant entered the car with her. She inquired if he was a Hardin-Simmons student and he replied that he was a preacher who had received his religious degree in California and that he only resided across the street from the Hardin-Simmons campus. Appellant stated that he had several pets including one very cute poodle which he would give complainant if she liked it. When they arrived at appellant's garage apartment appellant went to get the poodle and complainant accompanied him to the door but declined to enter. Appellant placed a chair just inside the door and she stepped in and sat in the chair. After a few minutes of conversation, appellant suggested that it was getting chilly and closed and locked the front door, and at the same time struck the seated complainant in the mouth with his fist. He then stabbed her in the neck with an ice pick and told her he would kill her if she screamed. When she refused to lie on the floor at his command he stabbed her on the other side of the neck. She still refused to get on the floor and he hit her in the eye and on the side of the face. He also stabbed her on the right thigh. When she continued to refuse to have intercourse with him, appellant promised her that if she would expose her privates he would masturbate and then release her. He kept his promise. Complainant then went to the hospital where the police were called and appellant was arrested in his apartment shortly thereafter.

The sufficiency of the evidence is not challenged.

Appellant initially contends that records of a prior felony conviction were improperly admitted. Appellant argues that the records are not certified.

Art. 3731a, V.A.C.S., provides for the introduction of such documents as business records. Sec. 4 of that statute details the requirements for the authorization of these records.

"Such writings may be evidenced by an official publication thereof or by a copy attested by the officer having the legal custody of the record, or by his deputy. . . . the attestation shall be accompanied with a certificate that the attesting officer has the legal custody of such writing." Sec. 4, Art. 3731a, V.A.C.S.

State's Exhibit No. 12, the admission of which appellant contests, consists of several instruments. The first is executed by the Secretary of the State of California through his deputy and certifies that R. K. Procunier is the Director of the Department of Corrections and is in charge of the records for that department, and that the attestation of R. K. Procunier by Madelon Stuermann is in due form and Madelon Stuermann is the proper officer to make such an attestation. The second is a memo from R. K. Procunier to Madelon Stuermann, authorizing Madelon Stuermann to sign certificates of criminal records on behalf of R. K. Procunier. The third is a certification by Madelon Stuermann that the criminal record of appellant is in her custody, and that the attached document is a true and correct copy of the said original in her custody. The remaining instruments comprise appellant's criminal record in the State of California. Further, Officer Chronister of the Abilene Police Department testified that he had twenty years experience in fingerprint identification and that the fingerprints included in State's Exhibit No. 12 were those of the appellant.

We hold that appellant's criminal record in California was properly admitted and overrule his first contention. *Vessels v. State*, Tex.Cr.App., 432 S.W.2d 108. *Emerson v. State*, Tex.Cr.App., 476 S.W.2d 686.

Appellant's second ground of error is that the court erred in using appellant's prior

conviction in California for enhancement purposes because the same had not become final prior to appellant's subsequent conviction.

Sec. 12.42(d), V.T.C.A., provides that:

"If it be shown on the trial of any felony offense that the defendant has previously been finally convicted of two felony offenses, and the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final, on conviction he shall be punished by confinement in the Texas Department of Corrections for life."

■ State's Exhibit No. 12, which contained appellant's criminal record for California, reflects that appellant was convicted of "robbery in the second degree" on March 5, 1963, that on September 8, 1970, his term was fixed at ten years with release on parole, that on October 24, 1970, he was released on parole, and that on August 6, 1971, his parole was suspended. State's Exhibit No. 10 reflects that on January 10, 1973, appellant was convicted of the offense of sodomy in Taylor County. It is appellant's argument that since it cannot be determined whether or not appellant's second conviction occurred within the period of his parole, it cannot be a final conviction for the purposes of enhancement.

■ The sentence to be served, either actually confined, or on probation or parole, has no effect on the time at which the conviction becomes final. *Nealy v. State*, Tex.Cr.App., 500 S.W.2d 122. Further, when a conviction appears to be final on its face, as here, the burden of showing the same to be not final is on the defendant. *Simpson v. State*, Tex.Cr.App., 486 S.W.2d 807; *Miller v. State*, Tex.Cr.App., 472 S.W.2d 269.

No error is shown.

In his third ground of error, appellant complains of the admission of testimony as to the victim's mental state following the offense.

The testimony complained of is as follows:

"Q What was her mental state at that time from your point of view, your observation point?

"MR. LINDSEY: I object to that, Your Honor. I don't think that has any bearing on this particular case.

"THE COURT: I will overrule the objection. She may answer.

"MR. LINDSEY: Note our exception.

"MR. PAYNTER:

"Q You may answer.

"THE WITNESS:

"A I would say she was very upset."

The witness was a friend of the victim's who lived in the same dorm as the victim at Hardin-Simmons University, and who was called to the victim's room shortly after the offense. It is appellant's argument that the complained of testimony was in no way relevant to whether or not an offense had occurred.

■ This Court recently held that it was improper for a trial court to prohibit testimony as to whether or not the victim of an assault "appeared angry." *Hays v. State*, Tex.Cr.App., 480 S.W.2d 635. We have always permitted lay opinions as to the attitude or emotional state of the accused as well as others. *Ross v. State*, 153 Tex.Cr.R. 312, 220 S.W.2d 137; *Miller v. State*, 145 Tex.Cr.R. 419, 168 S.W.2d 864; *Windham v. State*, 93 Tex.Cr.R. 477, 248 S.W. 51. See also McCormick and Ray, Texas Practice, Vol. 2, Evidence, 2nd Ed., Sec. 1397. Although, as appellant contends, such testimony is seldom direct evidence of the commission of a crime, it is consistently indicative of the demeanor of the persons involved, an invaluable aid in understanding the circumstances of the event. No error is shown.

■ In his fourth ground of error, appellant complains the admission of testimo-

ny relating to the physical strength and boxing ability of the appellant. Bill Vick, Executive Director of the Boys Club of Abilene, testified that he knew appellant and that appellant was "very strong," and that appellant was licensed in California as a boxing trainer.

The salient fact in a case of false imprisonment is the fact of restraint. The power or ability to so restrain is of necessity pertinent to the main injury. We are not faced with the situation where an accused is confronted with evidence of other criminal acts, or of his being a criminal generally. *Albrecht v. State*, Tex.Cr.App., 486 S.W.2d 97. Evidence of the ability to commit an act is by no means indicative of a proclivity to commit that act. If the offense were burglary, who would question the admissibility of burglar's tools found in the possession of the accused? See 22A C.J.S. Criminal Law §§ 610–611.

No error is shown.

In his fifth ground of error, appellant complains of the prosecutor's asking the following question of Bill Vick, appellant's employer at one time: "Prior to going to work for you, did you do any checking him out or anything?"

Appellant's objection to this question was sustained, an instruction to disregard was given, but his request for a mistrial was denied.

■ The mere asking of a question will not call for reversal unless the same results in obvious harm to the defendant. *Fuller v. State*, Tex.Cr.App., 501 S.W.2d 112; *Sensabaugh v. State*, Tex.Cr.App., 426 S.W.2d 224. We note further that the matter was not pursued by the prosecutor, *Wood v. State*, Tex.Cr.App., 511 S.W.2d 37, and that ordinarily an instruction to the jury to disregard will cure any error. *Guerrero v. State*, Tex.Cr.App., 507 S.W.2d 765. The question here involved was not such a direct reference to conduct or character so prejudicial to the defendant as to require reversal in light of the precautionary steps taken by the trial judge.

No error is shown.

■ Finally, appellant complains of the following argument by the prosecutor:

"Now, I suppose this defendant would love for this Jury to disregard the confinement, disregard the lack of consent, disregard the exposure to this risk of bodily injury, and find him guilty of one of these lesser offenses. He will probably come and pump your hands and thank you and grin all the way to the jail, as he goes over and checks out.

"MR. LINDSEY: I would object to that, Your Honor. That is highly prejudicial, and there is no testimony: got to go check out.

"THE COURT: All right.

"MR. LINDSEY: That is ludicrous.

"THE COURT: Sustain the objection.

"MR. LINDSEY: I would ask for a mistrial on that, too.

"THE COURT: Overrule the motion for a mistrial."

The prosecutor's argument was improper, there being nothing in the record to support such an assertion. We do not feel, however, that the argument was so prejudicial that an instruction to the jury to disregard could not have cured any such error. Where an instruction could have rendered the error harmless, this Court is not inclined to reverse where the instruction is not requested. *Duran v. State*, Tex.Cr.App., 505 S.W.2d 863; *Blassingame v. State*, Tex.Cr.App., 477 S.W.2d 600.

No error is shown.

The judgment is affirmed.

Opinion approved by the Court.